All rise. Please be seated. Okay. This morning, the next case on the docket is Picole in the State of Illinois v. William Farnsworth, 5-15-0421. You ready? Okay. I haven't seen you in a long time. It's a pleasure. Counsel, may I please report? Eddie Unsel on behalf of Bill Farnsworth. There's essentially two issues. I will give a brief on this. The first issue is that we represent that Bill Farnsworth was sentenced excessively on the charge of second-degree murder. The second issue is that we fairly believe that the trial court was in error in finding him guilty beyond a reasonable doubt. I would start out by saying that I realize on both issues the burden that it is to show that it's akin to motions to reconsider, quite possibly it's akin to a certain male candidate winning the election today. No disrespect, Your Honor.  He presented as in error a stipulated set of facts. The court found him guilty of what they said was the lesser included. I don't think voluntary manslaughter at that time was the lesser included, but in any event, he was found guilty. They proceeded to a sentencing hearing. There was five factors in litigation. The state was asked if there were any factors in aggravation. The state and the South Door said no. The court went through its analysis. Back then, the steps for a scheme was four to 15, so the court deviated upwards from the minimum and an appeal ensued. The facts in South Door was that the defendant was invited to the deceased's home under the pretense that there was a party. When he got there, there was no party. There was just the deceased, and there was supposedly a homicidal advance made. There was a struggle, and the deceased was stabbed two times. The mitigating factors was that he was 35 years old. He had no prior record. He had served his country in one term honorably, but then in a three-hour period he was discharged dishonorably. He was employed, was married, and, of course, being a young man and having children, his family certainly depended on his income. Nevertheless, the court sentenced him to seven years. The Supreme Court and the court's main emphasis in that was that he had taken a life. We have the exact same instances here except all mitigating factors are better. At the sentencing hearing, we proffered to the court that there were eight mitigating factors. The state, as in South Door, said we have nothing in aggravation. The state gave nothing in aggravation. Nothing. They stood silent. And they specifically affirmed it. They said we have no aggravating factors. So, at the hearing, the court stated, I agree there's no aggravating factors, but I'm putting emphasis on two prior misdemeanors that he had. He had a DUI 33 years ago and a DUI 22 years ago. That was the only blunch on his record. If you look at South Door, the defendant, South Door, had been hospitalized for alcoholism and admitted in a sentencing hearing that he had problems with alcohol. He had a similarity then, and I would submit that the South Door similarity is worse. South Door was 35. Bill Muldren was 62 and had worked in not only two crafts. He was a automaker and a carpenter. Had had no issues of any kind. Had been married 40 years. He was not invited to his home, but the deceased here traveled to his home. So, the event occurred on Bill Longworth's property. Bill Longworth was 15 years older. He was an older man. And I point that out because I point to the Supreme Court. The Lockett Supreme Court would assess that the behavior of the deceased should be taken into consideration as a mitigating factor. In this instance, based on the stipulation, the defendant had got an unlisted number because the deceased was harassed. The very first 911 call from his wife says, my husband just shot someone who's been stalking him. The evidence at the altercation of the bar was that the defendant and the deceased were not in the parking lot, whereas the defendant gave him $100. Basically, I guess, to leave him alone. But that was not disagreed with because the $100 bill was found on the deceased's pocket. Was there a firearm, any kind of weapon found in the deceased's truck? There was not. There was not. What had happened is the defendant left. There was someone outside and viewed the deceased. No, what I'm focusing on, I mean, the actual scenario that you put forth was that he made some sort of, opened the door and made some sort of gesture to the inside of the cab, the truck cab. And I was wondering if there was any weapon found. It was a small car. It was like a little Nova. Okay, his car. His vehicle. Yes, he pulled up. He had pulled up behind the defendant. The defendant went into his house and harmed himself. Came out and was waving a gun. Basically, there was words saying, leave. And then he shut his car off. When he shut his car off, he walked off and was standing to the side of the vehicle with it. And his testimony was, or his statement was that the deceased shut the door open. And when the door came open, he didn't shoot him through the window, didn't shoot him through the glass, didn't shoot him through an open window. When the door was open, he seen his arm move and then shot him. Don't you think, I'm sorry. What was in his hand, it was an object, but it was a box of crackers. It was not a gun. Don't you think the fact that the defendant returned to his home and actually went in and got a weapon is a factor in aggravation? Even though it's not death. No, I understand that. And that's, know that I don't, but that is the reason for, I believe, the disposition. Yes, he could have gotten away. Absolutely. I mean, it could have been over. There would have been nobody dead. He could have locked the door, called the police, and then if the guy gets out and starts beating on his door and breaking in, then we have a different fact situation. But the guy had been told not to bother him. The person, he paid him his, he paid him his due, his bullying fee. He gave him $100. He didn't realize the guy followed him home. So, I mean, he's a trespasser at the very least. And you have the right to have a weapon on your home property. Let's just say he's in Saddlebar. Where did the guy get his kitchen knife? He's in the guy's home and stabs him. He didn't stab him once. He stabbed him twice. I mean, when you compare this to Saddlebar, I would like to see what is the difference. And Judge Gantz brings up a good point because what Saddlebar says is, well, the fact that there's a death, that's inherent. You can't use that. But you can use the harm, the degree of it. And so, I agree with you. Him going in and putting out a bang, that prevents him from being not guilty of everything. But it's still second degree. He was under his full belief that the guy had a weapon. Let me put you on the spot. Okay. What do you think the judge should have imposed? I cannot imagine a more clear fact situation since it happened on his home. The guy was told before not to come. The guy was a convicted felon. All of those facts, I cannot imagine a better situation where you wouldn't get probation. Probation is presumed. Why is it presumed? By the criminal code. If you take all of your factors that you just listed, then you add back in the fact that he went inside his house, instead of calling the police and saying, I've got trouble here. Picks up his own weapon and is going out. I mean, you don't think that kind of balances? I don't think that qualifies as harm for... Let's finish quickly. I don't think that that qualifies as the degree of harm as Salvador says that you need. It just, it makes it, as being not guilty of anything, it makes him guilty of second degree. And then you have the analysis. Thank you. Thank you. You'll have some time for rebuttal if you need it. And is it Ms. Hall? Yes. We took a couple extra minutes, so you'll be entitled to those. Welcome, first of all. Thank you. I understand you're a law student? I am at Michigan State University. And you came all this way from Lansing? I'm actually from... Is it Lansing? Yes, yes. East Lansing. I'm actually from Springfield, but I just go through law school. Well, we don't even know where Springfield is. I don't know how to get there, do we? And counsel with you is? Yes, Your Honor. Dave Robinson. Dave Robinson. Okay. Well, we were told that you worked on this appeal. I did. Okay. Well, why don't you tell us about it? Your Honors, present counsel, may it please the Court. My name is Kate Hall, and I'm the 7-Eleven custodian for the Illinois appellate prosecutor's office, and I will represent the people in today's argument. Your Honor, there are two issues in this case. First, whether the state proved the defendant guilty of second-degree murder beyond a reasonable doubt, which the state asserts that it did, and two, whether the trial court abused its discretion in sentencing the appellant to 12 years, which we believe it did not. For the following reasons, the state asks that this court reaffirm the decision on appeal. Turning to issue one, in People v. Cunningham, it was held that when examining the evidence and a case is sufficient to convict the defendant, the reviewing court must allow all reasonable inferences in favor of the prosecution. In this case, before the trial court, the state presented evidence that the defendant had been drinking, fought with a decedent at the DFW, drove while intoxicated, had an elevated blood alcohol level, and then shot the decedent in defendant's driveway, which is on the record at C-164. Do you really think there's any dispute that he killed this man? No, Your Honor. Okay. It's displaying accolades. Would you like me to move on? Let's go to the next issue, please. I think that's where Mr. Ozzle wants to be. So, the Illinois Supreme Court held in People v. Barrios that where it is claimed that the punishment Can you slow down just a little bit? Okay. Where it is claimed that the punishment imposed is excessive, although within limitations prescribed by the legislature, that sentence should not be disturbed unless it is greatly in variance with the purpose and spirit of the legislature. According to Illinois statute, the contested sentencing issue is one for the charge of secondary murder, which is a Class I felony and carries with it a possible sentence of 4 to 20 years. The defendant in this case was sentenced to 12. The Illinois Supreme Court has held that sentences cannot be compared and that each is unique. And the record at C-371 shows that during the sentence, the trial court stated that it believed the appellant's sentence was fair and just under all the circumstances and that this was not appellant's first offense. The court also recognized, as it proposed in counsel during his argument, that the defendant had two prior DUIs. But they were 33 years ago and 22 years ago. Yes, Your Honor. So, under our law, if he had gone to trial, do you think those offenses would have even come in as evidence? We have a rule in Illinois that was, I think the case was Montgomery. Right. Montgomery. Ten years. Ten years. Ten-year rule, we call it. So, if you have a conviction and it's more than 10 years old, you don't, it doesn't come in. So, I question why so much emphasis is placed on these ancient, at least they're ancient to me, you know, offenses. Your Honor, I don't think it was necessarily that the trial court was giving those factors any sort of deference. I think it was rather to establish that the defendant has made choices like the ones in this instance in the past. So, in this instance, he also drove while intoxicated with an elevated blood alcohol content. And he pled guilty to the DUI, didn't he? He did, Your Honor, yes. And I think that it was rather to show that the defendant has committed this type of action before, not so much that it was being used as a factor in his sentencing in this case, but rather that what the defendant had committed was a very serious offense and that those actions warranted serious consequences. Does it make any difference that the State offered no factors in aggravation? Your Honor, I don't believe that it does. The trial court heard all of the evidence, and it was up to the trial court's discretion. Although the State didn't offer any evidence in aggravation, the trial court heard all of the evidence as well as the stipulations from both sides and still found that a 12-year sentence was appropriate. Well, the offense now that this gentleman was found guilty of was second-degree murder, right? Yes, Your Honor. And within that offense, the law says that at the time of the killing, he or she believes the circumstances to be such that if they existed, would justify or exonerate the killing, justify or exonerate the killing under the principles. So within second-degree murder, we have almost an excuse, like self-defense kind of thing that's written in. So in light of that fact, do you think that the judge over-sentenced this gentleman? Your Honor, I do not. The defendant tried to raise a self-defense claim in front of the trial court. I know that there was an issue with the State stipulation in the defense's brief where they mentioned that the defendant stipulated that those would be the State's facts, but not necessarily that he agreed with the State's conclusion. So that's in the record? Yes, Your Honor. Okay. And the defense's stipulation in front of the trial court went to the defendant's state of mind. And after all of that, the trial court still heard all the evidence and ultimately found that the defendant was guilty of second-degree murder because his beliefs in that instance were unreasonable. So why is this case different from Salivar? Your Honor, I believe... How would I pronounce it? Salivar. Go ahead. I believe that this case is different. Number one, because of the age. And number two, because of the surrounding circumstances. So in this case, the trial court examined all the relevant facts before making its decision. And it didn't take any of those factors into aggravation, but rather it saw it as a larger act in the sequence of events. So talking about how the appellant... You're just talking way too fast. Oh, sorry. Tell me how the two cases are different. What's different about Salivar than this case? Your Honor, I believe in Salivar, the defendant was invited to the person's house and that they were actually inside the residence, whereas this, the decedent followed the defendant home, but they were in the driveway. He did not go inside of the defendant's house. In fact, the defendant went inside of his house, grabbed a weapon, and then came outside and... But isn't the focus... Given, that is a distinction. But isn't the focus whether the defendant had a reasonable basis to form a belief that there was some sort of imminent danger? And what my question is focusing on is the actions of the decedent, where it looked like opening, you know, with the car door, possibly getting a weapon. This was obviously an aggravated situation. This was a situation of sustained hostility. It was a confrontation in numerous points of the day. Wouldn't that be a basis for a reasonable belief on the part of defendant that there was a possibility of imminent harm from some sort of object that the decedent may be reaching for, such as a pistol? Your Honor, it would be the State's position that there was not a basis to establish an objectively reasonable motive behind the defendant's actions. So the defense presents an affirmative self-defense argument, although in this case there was no threat of force. There may have been a threat of force from the decedent, although they may have gotten into an argument at the VFW where both parties had been drinking. There was no pushing, no shoving. There was no physical violence. They went out into the parking lot and they had a verbal altercation, but they did not elevate to anything physical. And following the defendant home, as far as I am aware, there is not a case in Illinois that supports that following somebody home and parking behind them in their driveway is a threat of imminent force. Does a 15-year age difference make a difference? Can Your Honor clarify that question? In other words, you've got a 62-year-old man and an aggressor that is 15 years younger. Does the age difference make a difference in the reasonableness of a defendant's apprehension about an imminent harm or threat of imminent harm? Your Honor, it would be the State's position that the age difference would not affect it. We're talking here about something that is objectively reasonable, not something that is subjective. And to take away that something like the age would be coming up with a subjective reasoning as to the defendant's state of mind or his feelings in the incident. So he didn't demonstrate an actual level of fear. I know that in the defendant's brief, they talk about people being Jeffries, and there are six factors that are laid out to establish a primitive self-defense claim. And arguably the most important is that the belief was objectively reasonable. And the trial court, after hearing all of the evidence, after being present for both of the stipulations, after interacting with the defendant and hearing his testimony, found that his beliefs were unreasonable. So I don't believe that the age really comes into determining the objective reasonableness because it isn't objective. Did the victim threaten the defendant at the VFW when he left? Did he tell him something? Is that in evidence? Yes, I believe he said, and I forgive the language, Your Honor, something about whooping his ass. Close. Yes. I suppose. Your Honor, may I read the conclusion? Or would you like me to answer? No, go ahead. I want the answer, yes. Oh, okay. I believe that he did, but he wasn't the only one. The defendant had also participated in that kind of language, so much in fact that they had to be separated by the staff at the bar and told to go be in separate areas because they had both been. So this was not when he was leaving, it was during, but when they were separated? I thought it was as he was leaving. He did, he did say, the deceitful did say that as he was leaving, but I don't think that was the only isolated verbal confirmation of that. So he was threatened by the victim, and then the victim followed him home, and the victim reached in his car, and the defendant shot him? Not necessarily, Your Honor. I don't want to go over the timing, but essentially they had a verbal altercation in the parking lot. Well, I want to find the steps. Don't worry about the time, as long as the justice is asking. Okay. So they had an altercation in the bar, that was verbal, in the BMW. They had to be separated by the staff because it got heated. Then I believe that defendant went to the bathroom and decedent left. Defendant went out to his car where decedent approached him. They got into a verbal altercation about, I believe, the defendant accusing the decedent of smelling like marijuana. And the decedent said that in saying something like that, the defendant was hurting his chances of getting work, and that he was hard up financially. And then the defendant felt bad, I suppose, and gave him $100. And then... And where is all of this? This is in the parking lot. Of the bar? Yes. And then the defendant got in his truck and drove home, and the decedent followed him home. It would be the state stipulation that it wasn't necessarily something that was inherently aggressive. There wasn't a weapon in the cab of his car. Okay, that's not like going home. Was he not tailgating him and also right behind him? That was, I believe, the defendant's testimony that he felt he was being tailgated. But also, he had been drinking that day, and he was driving with an elevated blood alcohol content. I understand that he may feel that he was being the subject of some aggression, but his perception of that event may not necessarily have been correct given the fact that he was obviously very heated about this and that he had also been drinking. But that was his testimony? That was his testimony. So let me back up from what Justice Welch was saying. Once they left the bar parking lot, if the victim had not followed the defendant home, there would have been nothing more. Potentially, Your Honor. I can't speak to that. Right, but if they were in two different spaces, none of this would have happened, right? Yes, Your Honor. Very good. Okay. Thank you. May I briefly conclude, or is that... You're done. Okay. Thank you. Mr. Arnoldson, we allowed them to go over a little bit, so in your reply, if you need it, you'll be allowed at the same time. Thank you, Your Honor. I mean, I don't know. When I was in law school, when someone cited a case and said, this is precedent, this is obliged, you distinguish. Counsel's brief is silent. Salovar is not mentioned at all in their brief. And I took that as a concession that it is sexual analogous, and it does apply. And again, I hate to beat you so much, but if you apply the facts of Salovar, she distinguished some facts, but the facts were in our favor. Yes, he was younger. But isn't it true that an older person who has behaved, you know, 30 years longer than the defendant in Salovar without obligation, that's more of a mitigation. And the fact that it happened in the victim's house, that's less. This happened on my client's property. This was his home. This was his castle. It happened in his courthouse. And he had a right to go out there, and he had a right to be harmed. Could he have gotten away? Yes. And I honestly think that he would have been not guilty at this winter trial. But I was afraid of exactly what Justice Kasich brought out. He could have gotten away. And I think that you can have a mix of people in this society that says that in all accounts, you should avoid trouble. And you had two highly intoxicated individuals, but I believe that the deceit put himself in this situation. I just want to talk real briefly, the stipulations. The counsel's brief, it says that it was signed. It was not. This was not. This was the state presented, and they're attached to my brief. The state presented what they believe what happened. I presented mine, and in mine it says, in no way do we stipulate to the accuracy of theirs. This is a lie. I understand. The review process probably, arguably, states that you just look at thoroughness, and you ignore mine. Because every inference you have to give to the state, every fact you have to. So I'm saying that's wrong. If that is the rule of law, then follow that. But look at their stipulation. Look at that. And the court's fighting. And I think that this is where the mistake is. What we presented, it's called the imperfect self-defense. That's what we used to call it back in the day. And it is the one where you have a mistake in belief. Which is why we had involuntary manslaughter. Exactly. Exactly. This is voluntary manslaughter. That's how old we are. Yeah. I'm all that here. But for the court to have failed, see, this is where it gets interesting, and that's why we did the stipulation this way. The prosecution left in capital unheard. Therefore, for the court to have found guilty of second degree, which it did, the court also found that we proved, by a preponderance of the evidence, all of the elements of self-defense. So for counsel to say that we didn't prove the element, legally that's an incorrect statement. Because the court found that we did. By finding him guilty of second degree, it found that we sustained our burden on the affirmative defense and put forth that. It just found that it was not a reasonable belief. You know, because he didn't have a weapon. Because he had a box of crackers in his hand. But then the argument becomes, he did have something in his hand. He did kick the ball, didn't he? You know, I mean, he's standing there with a loaded gun, and the decedent decided to kick the ball when the man's standing there with a loaded gun. What do you expect? I mean... Mr. Hansel, is the court's order in here? I don't see it. The court's order. Did the court enter a written order? Finding your guy guilty? Yes, yes. Do you know what page it's on, or if it's in the appendix? I have the motion, but I don't have the order. No, I don't. I don't have the page. Okay. You know, Your Honor, he might have just announced it. I'm not just going to use the record. I recognize you weren't the attorney at trial. Yeah, I was. That's why I was asking. No, I was there. It may be in the record, but... Yeah. Okay. Yeah, I was there. Do you need any additional few minutes? No, I would just point out that, just coincidentally, today is the exact two-year anniversary of the witness' murder. My client has been incarcerated since then. You cannot give, even what I believe he should have got probation, I don't know any other facts to weigh. 615 does not allow you to give him that. But I think that if you look at the reason he's eligible, I would ask that you modify the sentence to the minimum, which is four years, which is what he should have received. Okay. Thank you both. We're going to take this case under advisement, and an order will issue in due course.